ams

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| WOLF CREEK NUCLEAR OPERATING CORP., KANSAS GAS & ELECTRIC CO., KANSAS CITY POWER & LIGHT CO., and KANSAS ELECTRIC POWER COOPERATIVE, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> FRAMATOME ANP, INC., and FRAMATOME ANP RICHLAND, INC., <br><br> Defendants. | Case No. 05-4120-JAR |

## MEMORANDUM AND ORDER GRANTING MOTION FOR REMAND

The Court now considers plaintiffs' Motion for Remand. (Doc. 15.) Plaintiffs filed this action in state court; and defendants removed it to federal court, asserting diversity jurisdiction. Plaintiffs move to remand this case back to state court, arguing that there is not complete diversity of parties, for plaintiff Wolf Creek Nuclear Operating Corp. ("Wolf Creek") is a citizen of the State of Delaware and defendants are also citizens of the State of Delaware. But defendants maintain that Wolf Creek was fraudulently joined as a party plaintiff, that the other plaintiffs have diverse citizenship and removal is therefore appropriate. The motion is now fully briefed and the Court is prepared to rule.[1] The Court grants plaintiffs' motion to remand as explained more fully below.

---

[1] The Court denies defendants' request for oral argument on this motion and finds that the written memoranda submitted by the parties are sufficient for this Court to make a determination. *See* D. Kan. R. 7.2.

**BACKGROUND**

Plaintiff Wolf Creek is a citizen of the State of Delaware, plaintiff Kansas Gas and Electric Co. ("KGE") is a citizen of the State of Kansas, plaintiff Kansas City Power and Light Co. ("KCP&L") is a citizen of the State of Missouri, and plaintiff Kansas Electric Power Cooperative, Inc. ("KEPCO") is a citizen of the State of Kansas. Wolf Creek operates the nuclear power plan known as Wolf Creek Generating Station, located in Burlington, Kansas in Coffee County. The remaining named plaintiffs own the nuclear power plant (collectively referred to as "the Owners"). Wolf Creek acts as a disclosed agent of the Owners of the plant and is responsible for the operation, maintenance, and repair of the plant along with the generation of power and energy. Wolf Creek performs these services through its own personnel or by others under contractual arrangements.

Both defendants (collectively referred to as "Framatome") are citizens of the State of Delaware. On August 25, 2005, plaintiffs filed a Petition in Coffee County, Kansas District Court asserting claims of fraud; negligent misrepresentation; gross negligence, negligence, and professional negligence; breach of contract; and promissory estoppel.

The allegations made by plaintiffs in the Petition surround work Framatome was to perform at the plant with the hardware, software, licensing, design, engineering, and installation of a digital control system for the plant, known as a "Distributed Control System," or "DCS." According to the Petition, Wolf Creek selected Framatome to "lead and complete its DCS Project and, over the period from the last half of 2000 through most of 2004, Wolf Creek paid Framatome millions of dollars and entered into several agreements for specific work by Framatome." During the course of the DCS project, Wolf Creek alleges that it worked directly

with Framatome and oversaw every aspect of the project. Wolf Creek paid invoices for the DCS project from funds contained in an account established by the Owners. In April 2004, the Nuclear Regulatory Commission refused to approve the DCS, concluding that it did not meet the applicable design requirements. In September 2004, Wolf Creek stopped work on the DCS project. Subsequently, Wolf Creek employees discovered that Framatome wrongly billed engineering and development time and engineering "false starts" to Wolf Creek.

On October 11, 2005, Framatome timely filed a Notice of Removal in this Court, contending that the Court has diversity jurisdiction. Although Plaintiff Wolf Creek and both defendants are citizens of Delaware, Framatome argued in the Notice of Removal that plaintiff Wolf Creek was a fraudulently joined party and should be ignored for purposes of determining diversity jurisdiction.

## DISCUSSION

Only state court actions that could have originally been filed in federal court are removable.[2] The court is required to remand "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction."[3] As the party invoking the federal court's jurisdiction, Framatome carries the burden of demonstrating that the requirements for exercising jurisdiction are present.[4] Because federal courts are courts of limited jurisdiction, the law imposes a presumption against federal jurisdiction,[5] and requires a court to deny its jurisdiction

---

[2] 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

[3] *Id.* § 1447(c).

[4] *See Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001) (citation omitted), *aff'd*, 126 S. Ct. 704 (2005).

[5] *Frederick & Warinner v. Lundgren*, 962 F. Supp. 1580, 1582 (D. Kan. 1997) (citing *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)).

in all cases where such jurisdiction does not affirmatively appear in the record.[6]  "Doubtful cases must be resolved in favor of remand."[7]  Subject matter jurisdiction based on diversity requires that no plaintiff be a resident of the same state as any defendant and that the amount in controversy exceed $75,000.[8]  Removal jurisdiction over diversity cases is more limited than jurisdiction over diversity cases originally brought in federal court because removal based on diversity is available only if none of the defendants is a citizen of the state in which the action is brought.[9]

It has long been held that the right of removal cannot be defeated by "a fraudulent joinder of a resident defendant having no real connection with the controversy."[10]  Fraudulent joinder is a term of art; it does not reflect on the integrity of the plaintiff or counsel, but exists regardless of the plaintiff's motives when the circumstances do not offer any other justifiable reason for joining the defendant.[11]  The removing defendant's burden of proving fraudulent joinder is not unlike the burden of proving any claim of fraud.[12]  "[U]pon specific allegations of fraudulent joinder, the court may pierce the pleadings, consider the entire record, and determine

---

[6]*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

[7]*Thurkill v. The Menninger Clinic, Inc.*, 72 F. Supp. 2d 1232, 1234 (D. Kan. 1999) (citing *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995), *cert. denied*, 516 U.S. 863 (1995) (further citations omitted)).

[8]28 U.S.C. § 1332(a).

[9]*Id.* § 1441(b).

[10]*Cooper v. Zimmer Holdings, Inc.*, 320 F. Supp. 2d 1154, 1156–57 (D. Kan. 2004) (quoting *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)).

[11]*Id.* (citation omitted).

[12]*McLeod v. Cities Serv. Gas Co.*, 233 F.2d 242, 246 (10th Cir. 1956).

the basis of joinder by any means available."[13]  Plaintiffs, however, raise the threshold question of whether the fraudulent joinder doctrine may apply to the joinder of plaintiffs.  The Court first address this issue.

### A. *Application of Fraudulent Joinder Doctrine to Plaintiffs*

The district courts in this circuit define fraudulent joinder as, "joinder of a *resident defendant* having no real connection with the controversy."[14]  Both parties acknowledge that the Tenth Circuit has not addressed the issue of fraudulent joinder of plaintiffs in order to defeat diversity jurisdiction in the federal courts.  However, some courts outside this circuit have held that fraudulent joinder of plaintiffs may not be allowed to defeat the right of removal.[15]  For the purposes of deciding this motion the Court will assume, without deciding, that this circuit would extend the doctrine of fraudulent joinder to plaintiffs.

### B. *Wolf Creek's Claims*

The Tenth Circuit addressed fraudulent joinder claims in its unpublished opinion, *Montano v. Allstate Indemnity*,[16] stating:

> "To prove their allegation of fraudulent joinder [the removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against [the joined party] in state court.  In evaluating fraudulent joinder claims, we

---

[13]*City of Neodesha, Kan. v. BP Corp. N. Am. Inc.*, 355 F. Supp. 2d 1182, 1185 (D. Kan. 2005) (quoting *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964) (citations omitted)).

[14]*See, e.g.*, *Cooper*, 320 F. Supp. 2d at 1157 (emphasis added) (quoting *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)); *Van Hoecke Contracting, Inc. v. Lennox Indus., Inc.*, No. 05-2343-JWL, 2005 WL 2575271, at *1 (D. Kan. Oct. 12, 2005).

[15]*See, e.g.*, *Hodach v. Caremark RX, Inc.*, 374 F. Supp. 2d 1222, 1224 (N.D. Ga. 2005); *Grennell v. W. S. Life Ins. Co.*, 298 F. Supp. 2d 390, 395–97 (S.D.W. Va. 2004); *Foslip Pharmaceuticals, Inc. v. Metabolife Int'l, Inc.*, 92 F. Supp. 2d 891, 903 (N.D. Iowa 2000); *Oliva v. Chrysler Corp.*, 978 F. Supp. 685, 689 (S.D. Tex. 1997).

[16]211 F.3d 1278 (table), 2000 WL 525592 (10th Cir. Apr. 14, 2000).

> must initially resolve all disputed questions of fact and all
> ambiguities in the controlling law in favor of the non-removing
> party. We are then to determine whether that party has any
> possibility of recovery against the party whose joinder is
> questioned." This standard is more exacting than that for
> dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the
> latter entails the kind of merits determination that, absent
> fraudulent joinder, should be left to the state court where the action
> was commenced. Finally, as the reference to "a cause of action" in
> the quoted passage reflects remand is required if any one of the
> claims against the non-diverse defendant . . . is possibly viable. [17]

Although *Montano* is unpublished, other courts in this district have recently relied upon its reasoning as persuasive.[18] Because the case has persuasive value with respect to this issue that is not resolved in the Tenth Circuit's published opinions, and because its rationale assists this Court in deciding the instant pending motion, the Court shall also rely upon *Montano*.[19]

Thus, the Court will determine whether Wolf Creek has any possibility of recovery against Framatome, viewing any disputed questions of fact and all ambiguities in the controlling law in favor of the plaintiffs, as the non-removing parties.[20] "To defeat plaintiffs' motion to remand it is incumbent upon defendants to show that there is no possibility that plaintiffs would be able to establish a cause of action against [the defendant] in state court."[21] To make this determination, the court looks to the facts pled in the Petition and the law of the state of

---

[17] *Id.* at *1–2 (quoting *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000)) (citations omitted).

[18] *City of Neodesha*, 355 F. Supp. 2d at 1186–87; *Cooper*, 320 F. Supp. 2d at 1157; *Crow v. State Indus.*, No. 01-2555, 2003 WL 1053945, at *3 (D. Kan. Feb. 27, 2003).

[19] *See* 10th Cir. R. 36.3(B)(1)–(2) (explaining that unpublished decisions may be cited if they have persuasive value with respect to a material issue not addressed in a published opinion and it would assist the court in its disposition).

[20] Framatome does not allege fraudulent pleading of jurisdictional facts by plaintiffs. The parties do not dispute the jurisdictional facts, such as citizenship of the parties, set forth in the Petition.

[21] *Cooper*, 320 F. Supp. 2d at 1157.

Kansas.[22]

Any ambiguities in the controlling state law are resolved in favor of the plaintiff.[23]

### 1. Contract Claims

Wolf Creek asserts claims of breach of an oral contract and promissory estoppel. Framatome argues that Wolf Creek may not maintain an action in contract because it acted as an agent for a disclosed principal in forming the contract at issue and was not a "real and substantial party to the contract."[24] Wolf Creek responds that under K.S.A. 60-217(a), it may be named as a party to this suit despite its status as the Owners' agent:

> (a) *Real party in interest.* Every action shall be prosecuted in the name of the real party in interest; but . . . a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in the party's own name without joining the party for whose benefit the action is brought.

In Kansas, the general rule is that "an agent signing a contract for a disclosed principal is not a party to the contract and therefore cannot enforce the contract."[25] However, the rule "has been modified by the real party in interest statutes and rules. One of the purposes of this modification is to relax the strict common law rules 'to enable those who are directly interested but not parties

---

[22]*See City of Neodesha*, 355 F. Supp. 2d at 1187.

[23]*Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995).

[24]The Court notes that both parties conflate the issues of fraudulent joinder of plaintiffs and whether a plaintiff is a real party in interest pursuant to Fed. R. Civ. P. 17. Neither case discussed by the parties on what constitutes a real party in interest does so in the context of fraudulent joinder. *Kraemer* discusses Fed. R. Civ. P. 17 on a motion to dismiss. *Edward Kraemer & Sons, Inc. v. City of Kansas City, Kan.*, 874 F. Supp. 332, 334 (1995) (citing 3 Am. Jur. 2d Agency § 346 (1986)). *Caldwell-Baker* decides the issue on a motion to remand that did not deal with fraudulent joinder. *Caldwell-Baker Corp. v. Burlington N. R.R.*, No. 96-2173-GTV, 1996 WL 439297, at *2 (D. Kan. July 9, 1996).

[25]*Edward Kraemer & Sons, Inc.*, 874 F. Supp. at 334 (citing 3 Am. Jur. 2d Agency § 346 (1986)); *accord Caldwell-Baker Corp.*, 1996 WL 439297, at *2.

to the contract to maintain an action for its breach.'"[26]

The contract at issue is unwritten; therefore, there is no document to guide the Court in determining the understanding of the parties at the time the contract was formed. Wolf Creek alleges in its Petition that it formed an agreement with Framatome "in several meetings and by several intermediate agreements and promises" that involved Framatome agreeing "to design a system and provide hardware that would achieve NRC approval, would cost within a certain reasonable range, and would be installed and in operation within a reasonable period of time." Under its promissory estoppel theory, Wolf Creek alleges that it relied to its detriment on the promises made by Framatome and suffered damages as a result.

Instead of a written contract, the parties discuss the significance of purchase orders submitted by Framatome and an Alliance Agreement that Framatome argues Wolf Creek "intended" to sign. Each party submits different pages from the same purchase order to support their respective arguments. Wolf Creek attaches page 2 of 19 of the purchase order to its motion that states: "For the purposes of this Purchase Order 725196, the terms "Buyer" and "WCNOC" shall be interpreted to be synonymous.[27] In contrast Framatome points the Court to the last page of that purchase order, where the signature block reads: "Wolf Creek Nuclear Operation Corporation as agent for Kansas Gas and Electric Company, Kansas City Power & Light Company and Kansas Electric Power Cooperative, Inc."[28] Framatome also attaches to its Notice of Removal the signature blocks from other purchase orders that contain the same agency

---

[26]*Edward Kraemer & Sons, Inc.*, 974 F. Supp. at 335 (quoting 59 Am. Jr. 2d Parties § 28) (citation omitted); *Caldwell-Baker Corp.*, 1996 WL 439297, at *3;

[27](Doc. 15, Ex. E.)

[28](Doc. 1, Ex. 2.)

language.  However, Framatome fails to discuss how this is dispositive of the issue of whether Wolf Creek was a party to the oral contract at issue.  Neither the oral contract nor the promissory estoppel claim is derived from the purchase orders.  The promises and assurances alleged to form the basis of the contract claims were made orally.

Further, Framatome heavily relies on an Alliance Agreement that it attached to its response.  The title page of the agreement reads, "Alliance Agreement Among Union Electric Company d/b/a/ Amerenue and Wolf Creek Nuclear Operating Corporation and Framatome ANP, Inc."  The agreement was signed by a representative of Framatome and a representative of Union Electric Company.  The signature block for Wolf Creek reads: "Wolf Creek Nuclear Operation Corporation As agent for Kansas Gas and Electric Company, Kansas City Power & Light Company and Kansas Electric Power Cooperative, Inc."  However, no representative from Wolf Creek signed the agreement.  Because there is no evidence that this agreement was executed between any of the parties to this suit, the Court fails to see its probative value.  If anything, it appears to create even more of an issue of fact, as the title of the agreement suggests that Wolf Creek is a party, and not simply an agent to that agreement.

Viewing all disputed facts and ambiguities in the controlling law in favor of plaintiffs, the Court is unable to conclude that there is no possibility that Wolf Creek could recover under a breach of contract or promissory estoppel theory against Framatome.  There is a possibility that Wolf Creek could sustain a breach of contract or promissory estoppel claim against Framatome based on representations made orally.  The State court could determine that K.S.A. § 60-217(a) applies, which is an exception to the general rule that an agent for a disclosed principal does not have standing to maintain a contract action against a third party.  Further, under controlling case law, the State court could conclude that Wolf Creek "is more than a mere agent for a disclosed

9

principal," and may maintain a contract action in its own name.[29] Neither the purchase orders nor the Alliance Agreement show that there is no possibility of such a result in State court.

### 2. Tort Claims

Under the Tenth Circuit standard, Wolf Creek only needs to show that Wolf Creek, as the non-diverse plaintiff, has at least one claim that is possibly viable in State court. Because the Court has already determined that the breach of contract and promissory estoppel claims are possibly viable in State court, whether Wolf Creek has the possibility of sustaining a tort claim against Framatome is not dispositive. For the sake of completeness, however, the Court will address Framatome's arguments.

Framatome argues that Wolf Creek may not maintain an action in tort because there is no evidence of Framatome's intent to harm Wolf Creek as an agent of the Owners, which is required for it to sustain a cause of action under the Restatement (Second) of Agency § 374. The Court initially notes that on a motion to remand, the Court is primarily concerned with the allegations made in the Petition, rather than the evidence needed to sustain those allegations. Wolf Creek alleges that Framatome committed fraud and was negligent by making knowingly false misrepresentations surrounding the DCS project to Wolf Creek, and that Framatome committed negligence in breaching the applicable standard of care causing Wolf Creek damage. The Court finds that Framatome is unable to meet its heavy burden of showing that there is no possibility that these tort allegations could be viable in State Court.

On November 22, 2005, Wolf Creek filed an Amended Complaint (styled "First Amended Petition") adding a paragraph that alleges "Framatome intended to harm Plaintiff Wolf

---

[29]*See Caldwell-Baker Corp.*, 1996 WL 439297, at *3.

Creek Nuclear Operation Corporation and owners KGE, KCP&L and KEPCO." Framatome argues that this "11th hour attempt to state a cause of action in tort against Framatome is a transparent attempt to get around Wolf Creek's fraudulent joinder." But, "personal deductions from plaintiff's litigation strategy are generally insufficient to meet the heavy burden to show fraudulent joinder."[30] The Court declines to read into a one-line addition to the original Petition, a bad faith attempt to defeat diversity jurisdiction. As already stated, the factual allegations set forth in the original Petition are nonetheless sufficient to show some possibility that Wolf Creek's tort claims would be viable in State court.

### C.  Request for Fees

Wolf Creek asks the Court for an award of attorneys' fees and costs incurred as a result of the improper removal of this case. The parties both filed supplemental briefs on this issue to address a recent United States Supreme Court case that arose after the original briefing was complete. The Court grants Framatome's Motion for Leave to file its supplemental brief under D. Kan. R. 15.1.  (Doc. 24.)

Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Framatome correctly points the Court to the recent Supreme Court case, *Martin v. Franklin Capital Corp*,[31] which sets out the appropriate standard for awarding such fees under the statute. The Court explained:

> Absent unusual circumstances, courts may award attorney's fees

---

[30]*City of Neodesha, Kan. v. BP Corp. N. Am. Inc.*, 355 F. Supp. 2d 1182, 1189 (D. Kan. 2005).

[31]126 S. Ct. 704 (2005).

11

> under § 1447(c) only where the removing party lacked an
> objectively reasonable basis for seeking removal. Conversely,
> when an objectively reasonable basis exists, fees should be denied.
> In applying this rule, district courts retain discretion to consider
> whether unusual circumstances warrant a departure from the rule
> in a given case. For instance, a plaintiff's delay in seeking remand
> or failure to disclose facts necessary to determine jurisdiction may
> affect the decision to award attorney's fees. When a court
> exercises its discretion in this manner, however, its reasons for
> departing from the general rule should be "faithful to the purposes"
> of awarding fees under § 1447(c).[32]

Therefore, the Court must determine whether Framatome had an objectively reasonable basis for seeking removal.

Wolf Creek argues that there was not an objectively reasonable basis for removal here due to the lack of authority on fraudulent joinder of plaintiffs in this jurisdiction. The Court is unable to conclude, however, that Framatome did not have an objectively reasonable basis for seeking removal here. There is some clear authority outside this jurisdiction that fraudulent joinder may apply to plaintiffs. Although courts in this jurisdiction have been silent on the issue, the Court was unable to locate a case that was contrary to Framatome's position in removing this action. Instead, Framatome made an objectively reasonable attempt to extend the law in this jurisdiction. Additionally, the Court does not find any unusual circumstances present that would warrant a departure from the general rule. Therefore, the Court declines Wolf Creek's request to impose fees and costs associated with this motion.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion for Leave to File Supplemental Opposition to Plaintiff's Motion to Remand is **GRANTED.**

**IT IS FURTHER ORDERED BY THE COURT THAT** defendants' Motion to

---

[32]*Id.* at 711 (citations omitted).

Remand (Doc. 15) is **GRANTED**.

**IT IS SO ORDERED.**

Dated this  27th   day of February 2006.

 S/ Julie A. Robinson
Julie A. Robinson
United States District Judge

Wolf Creek Nuclear Operating Corp. v. Framatome ANP, Inc., *Order Granting Motion for Remand*, Case No. 05-4120.